C Em

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

FILED
07 DEC 26 AM 9:
CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY: DEPUTY

| | |
|---|---|
| **UNITED STATES OF AMERICA,**<br>Plaintiff,<br>v.<br>**1) Sergio PRECIADO-Diaz,**<br>**2) Concepcion GARCIA-Orozco**<br>Defendant(s) | Magistrate Case No. 07 MJ 2966<br><br>COMPLAINT FOR VIOLATION OF:<br><br>Title 8 U.S.C., Sec. 1324 (a) (1) (A) (iii)<br>Harboring and Concealing (Felony) |

The undersigned complainant, being duly sworn, states:

On or about **December 21, 2007** within the Southern District of California, defendants **Sergio PRECIADO-Diaz and Concepcion GARCIA-Orozco**, knowing and in reckless disregard of the fact that certain aliens, namely, **Mirta Yolanda LUNA-Portillo, Hector GUZMAN-Garcia, and Jaime Antonio PRECIADO-Garcia**, had come to, entered and remained in the United States in violation of law, did conceal, harbor and shield from detection said aliens, and attempt to conceal, harbor and shield from detection said aliens, in violation of Title 8, United States Code, Section 1324(a)(1)(A)(iii).

And the complainant further states that this complaint is based on the attached statement of facts, which is incorporated herein by reference.

SIGNATURE OF COMPLAINANT
James Trombley
Senior Patrol Agent

SWORN TO BEFORE ME AND SUBSCRIBED IN MY PRESENCE, THIS **26th** DAY OF **DECEMBER, 2007**

Leo S. Papas
UNITED STATES MAGISTRATE JUDGE

CEM

**CONTINUATION OF COMPLAINT:**
**1) Sergio PRECIADO-Diaz**
**2) Concepcion GARCIA-Orozco**

## PROBABLE CAUSE STATEMENT

I declare under the penalty of perjury that the following statement is true and correct:

Furthermore, the complainant states that **Mirta Yolanda LUNA-Portillo, Hector GUZMAN-Garcia, and Jaime Antonio PRECIADO-Garcia,** are citizens of a country other than the United States; that said aliens have admitted that they are deportable; that their testimony is material, that it is impracticable to secure their attendance at the trial by subpoena; and they are material witnesses in relation to this criminal charge and should be held or admitted to bail pursuant to Title 18, United States Code, Section 3144G.

On December 20, 2007, Border Patrol Agents from the San Diego Sector's Special Response Team (SRT) and Smuggling Interdiction Team (SIG) executed a federal search warrant on a residence located in National City, California. SIG Agents had established probable cause that violations of federal law under 8 USC 1324 (alien smuggling) were occurring at the residence.

At approximately 10:55 am, the Agents approached the residence and deployed multiple Agents to serve the search warrant. All Agents were dressed in raid gear and wearing outer vests that clearly stated Police/Federal Agent on them. As the Agents entered through a wooden car gate, they observed three Hispanic male subjects seated in the rear of a blue 1997 Volkswagon Jetta. Agents identified themselves as Border Patrol Agents and secured all three subjects for officer safety.

As this was occurring, a female, later identified as defendant 2 **Concepion GARCIA-Orozco**, observed them and ran into the interior of the house out of sight. Defendant **GARCIA** attempted to escape through the kitchen area but was unable to work the key and subsequently was verbally dissuaded by other Agents present outside that exit. Seconds later she was apprehended by Agents Acosta and Hika as they cleared the house. During the later search of the residence, a cell phone was located in a trash bag where defendant **GARCIA** was detained and handcuffed. This phone was seized.

Defendant **GARCIA** was placed in handcuffs and escorted to the main room of the residence. When defendant **GARCIA** reached this area, she was placed on her stomach for safety reasons. Supervisory Border Patrol Agent J. Wallace (SIG) witnessed Agent Dishman release a fanny pack type purse from defendant **GARCIA**'s waist. In the search that followed after the scene was secured, two large wads of US currency were located inside the fanny pack. This money was seized as proceeds related to alien smuggling.

Agents Chapa and Seiler entered a wide passage room to the rear of the house and encountered a Hispanic male wearing a white sweater next to a sofa that had a sealed white envelope, two cell phones and a single vehicle key on one of the cushions. The male was secured and later identified as defendant one, **Sergio PRECIADO-Diaz**.

The envelope was determined to contain United States paper currency and a list of money figures. This amount had also been written on the outside of the envelope. The key was later determined to be for the blue Volkswagon Jetta parked in the driveway where three illegal aliens were inside waiting to be transported north.

Agents Chapa and McDaniel continued to clear the residence and entered the first of the two rear rooms. Nobody was present in the first room. Upon entering the second room and the Agents observed four males and one female in an unkempt room with bedding items and stockpiled clothing. All subjects were secured and Agents finished clearing the remainder of the residence. The female was eventually moved to the front of the residence.

**CONTINUATION OF COMPLAINT:**
**1) Sergio PRECIADO-Diaz**
**2) Concepcion GARCIA-Orozco**

CEM

While Agents were securing the residence, Border Patrol Agent B. Desrosiers (SIG) questioned the three individuals detained from the back of the Volkswagon Jetta. All three subjects admitted to being citizens and nationals of Mexico and none claimed to have immigration documents. Agent Desrosiers informed them they were under arrest.

Agent Desrosiers saw defendant GARCIA sitting on the floor of the residence and questioned her as to her citizenship. Defendant GARCIA stated she was a citizen of Mexico and did not have immigration documents. Two other individuals were also secured in the front room. Both subjects, Jose VARGAS-Montanar and a female, later identified as Mirta Yolanda LUNA-Portillo were questioned as to their citizenship. VARGAS and LUNA both stated they were Mexican citizens without immigration documents. Both were placed under arrest. When LUNA eventually was transferred to the Chula Vista Station for processing, she was questioned further about her citizenship and admitted to being a citizen and national of Honduras.

Agent Desrosiers entered the rear room where the four males were detained. Agent Desrosiers identified himself as a Border Patrol Agent and questioned all four as to their citizenship. All of the subjects admitted to being citizens and nationals of Mexico and none claimed to possess immigration documents. They were all placed under arrest.

In the first front room that contained an area that appeared to be defendant GARCIA's main sleeping area, Agents discovered a list of Hispanic names that had corresponding nicknames assigned to them. Based on Agent Desrosiers' experience and the experience of many Agents with whom he works, this was interpreted as a record keeping ledger for purposes of giving credit for aliens transported or delivered. To the left of each entry was a letter notation in which four were clearly marked with "L.A." This was interpreted to mean transported to Los Angeles. A second list of Hispanic names was also present with seven entries and corresponding nicknames.

The first rear bedroom adjacent to the bathroom contained eleven other lists of Hispanic names totaling 144 names with many having corresponding names and nicknames. One entry had the name "Connie" associated with it. Several had references to "L.A."

The last bedroom where five smuggled aliens were located contained folded up bedding and an abundance of clothes for men and women. It is Agents' collective belief that the bedding was used for smuggled aliens and that the clothing was utilized for cleaning up smuggled aliens who may have soiled their clothes due to inclement weather or a long crossing. Inside this bedroom, a government issued Social Security card in the name of Maria Lopez was located and seized. A Gold Western Union money transfer card in the name of the defendant Concepcion Garcia Orozco was also located as was defendant **GARCIA**'s birth certificate

After the search all subjects and vehicles were transported to the Chula Vista Station Border Patrol Station for processing.

**STATEMENT OF DEFENDANT SERGIO PRECIADO-DIAZ:**

PRECIADO was read his Miranda rights and said that he understood his rights, and was willing to answer questions without the presence of an attorney.

PRECIADO stated that he is a Mexican national. PRECIADO stated that he does not have any immigration documents allowing him to be in or enter the United States legally. PRECIADO said that he lives in Rialto, California. He stated that he is known by the moniker "El Moreno."

**CONTINUATION OF COMPLAINT:**
**1) Sergio PRECIADO-Diaz**
**2) Concepcion GARCIA-Orozco**

CEM

Defendant PRECIADO admits that he is a member of a northbound transportation cell and that he works as a load driver transporting undocumented aliens from San Diego to the Los Angeles area. He stated that he is paid $100.00 (USD) for each undocumented alien whom he successfully transports. Defendant PRECIADO further admitted that he has been working in this capacity for the last six months and that during that time he has driven loads north 2 or 3 times per week. Defendant PRECIADO estimated that he has successfully driven between 40 and 45 loads of undocumented aliens to the Los Angeles area, and that the average size of the loads, given that the smuggling cell uses small cars, has been about 3 or 4 aliens per trip. Defendant PRECIADO said that he is aware that the persons whom he transports do not have documents allowing them to enter the United States legally.

Defendant PRECIADO stated that he had been arrested about 6 times by the Border Patrol, and that he had been returned voluntarily to Mexico on each occasion. He stated that he has never been arrested by the police and has no criminal history.

Defedant PRECIADO said that on today's event he received a call from his boss Victor, to meet him at a gas station at the Miliken exit off of the I-10. Defendant PRECIADO said that he went there and waited about an hour. When Victor arrived, he gave him the blue Volkswagen Jetta as well as an envelope. Defendant PRECIADO stated that he knew the envelope contained cash smuggling proceeds. He explained that he is often given money to deliver and that whenever they give him an envelope it contains cash which he knows to be illegally obtained alien smuggling proceeds. Defendant PRECIADO said that he was supposed to receive a call upon arriving at the house, telling him who to give the money to.

Defendant PRECIADO was also told to take an illegal alien back to San Diego. He was told that this subject had been accidentally taken to Los Angeles, when he was only going to the San Diego area, and thus he needed to be brought back to the load house in San Diego. Defendant PRECIADO said that he was given the address to go to, and that during the trip, he was contacted via cell phone direct connect, to provide directions to the house. Defendant PRECIADO claimed that this is the first time that he has actually gone to a house in the San Diego area, and that he has always met up with others at gas stations. Defendant PRECIADO said that he had also been told that he would be picking up four additional undocumented aliens at the house and bringing them north to Los Angeles. He was to have taken these people to the area of the Miliken Exit off-ramp of I-10, where he would be told via cell phone the meeting point where he was to hand over the aliens to somebody else.

Defendant PRECIADO said that upon arriving at the load house, a lady told him to pull in through a vehicle gate into the yard, and he did so. Upon parking, he stated that he got out along with the smuggled alien and entered the house. Defendant PRECIADO said that he had both his cell phones, the keys to the car, and the envelope containing the money in his hands. When he entered, the lady of the house told him that these were the people whom he was to take. The lady then told the aliens to get into the Volkswagen, and told defendant PRECIADO that there were five smuggled aliens. The aliens started to load themselves into the car. Defendant PRECIADO told the lady that he had been told that there were four smuggled aliens.

At that point, defendant PRECIADO said that he glanced out the window and saw a large number of federal agents pull up outside, in various vehicles, and that they began swarming into the yard and residence. He stated that he did not run, but simply sat down in a chair and dropped his cell phones, the car keys and the envelope containing the money to one side of the chair. Defendant PRECIADO said that when the Agents entered the house he put his hands on his head and that they handcuffed him and laid him face down on the floor.

**CONTINUATION OF COMPLAINT:**
**1) Sergio PRECIADO-Diaz**
**2) Concepcion GARCIA-Orozco**

C EM

Defendant PRECIADO was shown 10 color Polaroid photographs of all of the individuals detained. Defendant PRECIADO identified photo #6 as the lady who runs the load house. Photo #6 of the set of 10 Polaroid photographs is defendant Concepcion GARCIA-Orozco. Defendant PRECIADO identified the remaining photographs as other smuggled aliens.

**STATEMENT OF DEFENDANT CONCEPCION GARCIA-OROZCO:**

Defendant GARCIA was advised of her rights as per the Miranda Warning. The defendant understood her rights and was willing to be interviewed without representation. Defendant GARCIA admits that she is a Mexican national illegally present in the United States. Defendant GARCIA admits that she has been residing in National City, California for three to four months. Defendant GARCIA states that she became desperate for money. She approached some smugglers whom she had met at the Blue Agave on Mission Gorge Road, offering to work for them.

Defendant GARCIA stated that one of the smugglers, “El Cunado”, had asked to let them use her house to stash illegal aliens and she agreed. Defendant GARCIA was to be paid $25.00 for each smuggled alien whom she harbored at her house. She stated that she has been harboring undocumented aliens at the house for the past three months. Defendant GARCIA admits that she may have harbored about 200 illegal aliens during this period. She worked for El Cunado for about two months, but that during this time he never really paid her all the money she was owed. And that he would simply giver her $100.00 here then $200.00 there without ever trying to catch up on all the money that he owed her.

Defendant GARCIA stopped working for El Cunado and began working for three other smugglers known as “El Duran”, “El Tule”, an “El Carnal” (also called “Pena”). This group ran a northbound transportation cell. Defendant GARCIA believed that El Duran was in charge. He would pay the rent for the apartment and that defendant GARCIA was tasked with the delivery and or buy outs of the smuggled aliens going to the local San Diego area. For this defendant GARCIA was to be paid $50.00 for each alien going to the local area.

JT

**STATEMENT OF MATERIAL WITNESSES:**

Material Witnesses **Mirta Yolanda LUNA-Portillo, Hector GUZMAN-Garcia, and Jaime Antonio PRECIADO-Garcia,** stated that they are citizens and nationals of Mexico (Except for LUNA who is a citizen of Honduras) illegally present in the United States. They stated that they did not have any immigration documents allowing them to be in the United States legally. They stated that arrangements had been made in Mexico to be smuggled into the United States. All the material witnesses stated that they were to pay between $2,000.00 to $3,000.00 U.S. dollars to be smuggled to various parts of the United States. When shown a photographic lineup all material witnesses selected photo #6 as the lady who was the caretaker of the house where he was arrested. Photo #6 depicts defendant Concepcion GARCIA-Orozco. When shown a photographic line up all material witness identified defendant #1 Sergio PRECIADO-Diaz as the load driver who was to transport them to their final destination.

**CONTINUATION OF COMPLAINT:**
**1) Sergio PRECIADO-Diaz**
**2) Concepcion GARCIA-Orozco**

**Executed on December 23, 2007 at 10:10 A.M.**

Raul Castorena
Senior Patrol Agent

On the basis of the facts presented in the probable cause statement consisting of 5 page(s), I find probable cause to believe that the defendant named in this probable cause statement committed the offense on **December 21, 2007**, in violation of Title 8, United States Code, Section **1324**.

Leo S. Papas
United States Magistrate Judge

12/23/07 - 1035 Am
Date/Time